Ralph W. Boroff (SBN: 59164)
Law Offices of Ralph W. Boroff, P.C.
55 River Street, Suite 100
Santa Cruz, CA 95060
Telephone: (831) 458-0502
Facsimile: (831) 426-0159

Attorney for Plaintiff
SCOTT HASBROOK

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| SCOTT HASBROOK, | Case No. 5:13-CV-02461-LHK |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR TORTIOUS DISCHARGE IN VIOLATION OF PUBLIC POLICY; BREACH OF CONTRACT; AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |
| vs. | |
| COSTCO WHOLESALE CORPORATION, and DOES 1 through 20, | |
| Defendant. | |

Plaintiff alleges:

1.      Defendant COSTCO WHOLESALE CORPORATION (COSTCO) is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Washington and doing business in California.

2.      VINCENT SILVIERA is employed by defendant COSTCO as regional manager with authority over all COSTCO locations mentioned herein.

3.      DENNIS ORSAG is employed by defendant COSTCO as manager of the Marina location.

4.      GUSTAVO LOPEZ is currently employed by defendant COSTCO as meat manager for the Marina location, and during Plaintiff's employment, was employed in a supervisorial capacity, but subordinate to Plaintiff, in the meat department of that location.

1

First Amended Complaint for Damages for Tortious Discharge in Violation of Public Policy;
Breach of Contract and Breach of The Covenant of Good Faith and Fair Dealing

5:13-CV-02461-LHK

5.     DARBY GREEK is employed by defendant COSTCO as a regional vice-president with authority over the Marina location.

6.     Defendants DOES 1 through 20 were at all times relevant herein employees, agents, and/or members of the Board of Directors of defendant COSTCO.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 20 inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will pray leave of this court to amend this complaint to allege the true names and capacities when ascertained.

7.     Plaintiff is informed and believes, and thereon alleges, that each of the defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining defendants and was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

## FIRST CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

8.     Plaintiff has been employed by defendant COSTCO since about 1990.  In about 2003, Plaintiff was promoted to the manager of the meat department at the Salinas location.  In about 2007, Plaintiff was transferred to the Marina location, where he was manager of the meat department until the termination of his employment.  During the entire time that Plaintiff was employed by Costco, and specifically during the entire time he served as manager of the meat department, Plaintiff's job performance was exemplary.

9.     In May 2012, Plaintiff responded to an "ethics survey" that the company propounded, and in his response he reported that most of the managerial positions were held by women, and that women were much more likely than men to be promoted to managerial positions.  Within two weeks Plaintiff's schedule was revised to require him to work later, which interfered with his family life. This was in retaliation for complaining about sex discrimination.

10.    In the fall of 2012, there was a problem in the meat department with some employees cutting and preparing more meat than could be sold by its sell-by date.  Plaintiff was attempting to implement changes in the meat department procedures to address this problem, and told his assistant,

2

GUSTAVO LOPEZ that LOPEZ would be held responsible if too much meat was prepared for sale. Plaintiff also specifically instructed all workers in the department to follow company procedures, and specifically, not to "face" the meat. "Facing" consists of cutting off the exposed surface of an old filet and re-wrapping it as if it were fresh. Similarly, Plaintiff instructed his staff not to place older meat into packages of stew meat.

11.     At that time, in the fall of 2012, the manager of the deli department, Kim Camacho, was taking items from the meat department without paying for them. This made Ms. Camacho's department look more profitable than it was, and made the meat department look less profitable. Plaintiff complained about that to his supervisor, Melissa Edwards. Instead of instructing Ms. Camacho to comply with company policy, Edwards paid for the items from another account. Plaintiff is informed and believes that Edwards complained about him to VINCENT SILVIERA, who took the actions hereinafter alleged in retaliation for Plaintiff's complaints about Camacho.

12.     Around this time, Plaintiff also informed Edwards that morale in the store was low.

13.     In or about October 2012, VINCENT SILVIERA reported to DENNIS ORSAG that he had seen packages of meat that had been "faced" in the meat counter at the Marina COSTCO. He also reported that some packages showed the wrong dates, which is likely to be a ministerial error by employees supervised by Plaintiff. DENNIS ORSAG met with Plaintiff to talk about it, and Plaintiff responded that SILVIERA must be mistaken, as he had specifically instructed his staff not to "face" the meat. At this time, Defendants, and each of them, knew that Plaintiff had been working almost exclusively in locations other than the meat department for the prior two days and could not have been responsible for the problems reported by SILVIERA.

14.     During this meeting, DENNIS ORSAG was supportive of Plaintiff's attempts to improve procedures in the meat department and correct any problems with "facing," misdating product, and/or overcutting. He then received a phone call from SILVIERA reporting that Plaintiff had complained about morale in the store. DENNIS ORSAG was visibly upset and angry about that.

15.     On October 25, 2012, in retaliation for Plaintiff's complaints about gender discrimination, his complaints about Camacho's violation of company policy, and his reports of

sagging morale, DENNIS ORSAG and DARBY GREEK decided to terminate Plaintiff's employment, in violation of the public policies described below.

16.     Public policy in California prohibits gender discrimination in employment and other business relations, and this policy is codified in the Unruh Civil Rights Act, California Civil Code sections 51 et seq., the California Fair Employment and Housing Act, Government Code sections 12900 et seq., as well as other statutes and constitutional provisions. Further, California public policy prohibits retaliation against those who complain about workplace discrimination or other unlawful practices. *Pettus v. Cole* (1996) 49 Cal. App. 4th 402, 454.

17.     On December 11, 2012, Plaintiff filed with the California Department of Fair Employment and Housing pursuant to Government Code section 12960. That same date, Plaintiff received from the Department a right to sue letter pursuant to Government Code section 12965(b). Plaintiff has exhausted all administrative remedies available prior to filing suit.

18.     As a proximate result of defendants' conduct, plaintiff has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, all to his damage in an amount to be established at trial.

19.     In doing the acts set forth above, defendants knew that California law prohibits terminating one's employment in retaliation for complaints about unlawful discrimination, or for whistle-blowing. Notwithstanding this knowledge, defendants despicably subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights by terminating his employment. Defendant's conduct warrants the assessment of punitive damages.

20.     Defendant COSTCO ratified the conduct of its agents DENNIS ORSAG and DARBY GREEK by falsely claiming, after Plaintiff's termination, that Plaintiff was terminated for violations of company policy.

### SECOND CAUSE OF ACTION

### Breach of Implied or Express Contract of Continued Employment

21.     Plaintiff incorporates herein by reference all allegations in the preceding paragraphs.

22.     Plaintiff was employed by defendant for 22 years, consistently received either good or excellent performance evaluations and merit raises, was assured on numerous occasions that he

4

1   would not be terminated arbitrarily, and relied on the provisions of the personnel manual, excerpts of

2   which are appended as Exhibit A, regarding the causes for which employees could be discharged, to

3   conclude that plaintiff and defendant had entered into an express and implied contract that plaintiff

4   would not be discharged unless there was good cause to do so.

5       23.     Based on the contract set forth in Paragraph 22 above, plaintiff had an employment

6   contract with defendant that he would be employed by defendant so long as his performance was

7   satisfactory, and that defendant would not discharge him without good and just cause.

8       24.     Plaintiff at all times fulfilled his duties and conditions under the contract and has been

9   ready, willing, and able to continue performing them in a competent and satisfactory manner.

10      25.     Defendant COSTCO was under a duty to terminate plaintiff only for good cause, i.e.

11  fair and honest reasons the product of a good faith belief by defendant's agents that plaintiff's

12  conduct violated one or more company policies after conduct of an adequate investigation which

13  included gathering of substantial evidence including notice to plaintiff of their findings and an

14  adequate opportunity for him to respond.

15      26.     Notwithstanding the express and implied promise to terminate the employment

16  contract only for good cause, on or about October 25, 2012, defendant COSTCO terminated

17  plaintiff's employment without cause, or for causes known to be false.

18      27.     As a proximate result of defendant's breach of the employment contract, plaintiff has

19  suffered and continues to suffer losses in earnings and other employment benefits, to his damage in

20  an amount to be established at trial.

21                              **THIRD CAUSE OF ACTION**

22              **Breach of Implied Covenant of Good Faith and Fair Dealing**

23      28.     Plaintiff incorporates by reference and realleges all preceding Paragraphs of this

24  complaint.

25      29.     The employment agreement referred to above contained an implied covenant of good

26  faith and fair dealing, which obligated defendant to perform the terms and conditions of the

27  agreement fairly and in good faith and to refrain from doing any act that would prevent or impede

28  plaintiff from performing any or all of the conditions of the contract that he agreed to perform, or any

5

First Amended Complaint for Damages for Tortious Discharge in Violation of Public Policy;
Breach of Contract and Breach of The Covenant of Good Faith and Fair Dealing                    5:13-CV-02461-LHK

act that would deprive plaintiff of the benefits of the contract.

30.     Plaintiff was employed by defendant for 22 years, and reasonably relied on the provisions of the personnel manual, a copy of which is appended as Exhibit A, regarding the causes for which employees could be discharged and for the expectation that defendant would apply its policies even-handedly to afford plaintiff the opportunity to respond to accusations of misconduct if defendant believed there was cause to discharge plaintiff.

31.     Plaintiff performed all the duties and conditions of the employment agreement.

32.     Defendant knew that plaintiff had fulfilled all his duties and conditions under the contract.

33.     Defendant breached the implied covenant of good faith and fair dealing under the employment agreement by discharging plaintiff intentionally, maliciously, and without probable cause, in bad faith and for reasons extraneous to the contract.

34.     As a proximate result of defendant's breach of the implied covenant of good faith and fair dealing, plaintiff has suffered, and continues to suffer, losses in earning in an amount to be established at trial. As a further proximate result of defendant's breach of the implied covenant of good faith and fair dealing, plaintiff has incurred reasonable attorney's fees in attempting to secure the benefits owed him under the employment contract.

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as follows:

1.     For damages for breach of contract according to proof, including lost earnings and other employee benefits, past and future;

2.     For compensatory damages according to proof, including lost earnings and other employee benefits, costs of seeking other employment, and damages for emotional distress, humiliation, and mental anguish;

3.     For interest on lost earnings and benefits at the prevailing legal rate from October 25, 2012;

4.     For punitive damages in an amount appropriate to punish defendant and deter others from engaging in similar misconduct;

6

5.      For reasonable attorney's fees incurred by plaintiff in obtaining the benefits due him/her under the employment contract with defendant;

6.      For costs of suit incurred by plaintiff; and

7.      For such other and further relief as the court deems proper.


Law Offices of Ralph W. Boroff, P.C.



By: _____
Ralph W. Boroff
Attorney for Plaintiff
SCOTT HASBROOK

Date:  June 27, 2013

---

7

First Amended Complaint for Damages for Tortious Discharge in Violation of Public Policy;
Breach of Contract and Breach of The Covenant of Good Faith and Fair Dealing

5:13-CV-02461-LHK

# EXHIBIT A

# Employee Agreement

## 11.3   CAUSES FOR TERMINATION

Our commitment requires us to operate within the law. You must adhere to Company policies and directives in all aspects of the operation. The following is a list of actions that can result in immediate termination of employment. [38] No previous Counseling Notices are necessary. If termination does not occur, an Employee Counseling Notice will be issued and is permanently retained in the employee's personnel file.

1. Falsification of Company records or timecards, including emailing facts or willfully giving wrong or misleading information. This includes, but is not limited to:
   a. The employment application
   b. Internal investigations
   c. Benefit enrollment forms
   d. Workers' compensation or LOA forms
   e. Inventory, vault or sales audit forms
   f. Food labels, temperature or fat test logs
   g. Signing someone else's timecard or swiping someone else's name badge
   h. Having your timecard signed or your name badge swiped by someone else

2. Violation of Company policy prohibiting harassment or discrimination including, but not limited to:
   a. Sexual harassment
   b. Retaliation
   c. Interfering with an investigation

3. Violation of Company policy not of the nature to constitute a violation of Company policy prohibiting discrimination or harassment including, but not limited to:
   a. Malicious gossip
   b. Derogatory attacks
   c. Retaliation
   d. Interfering with an investigation
   e. Breach of confidentiality

4. Unauthorized, collection, disclosure or misuse of confidential information relating to Costco, its members, employees, suppliers or agents including, but not limited to:
   a. Unauthorized removal of such confidential information from Company premises
   b. Recording a conversation without permission from all parties

[38] These causes for termination (including, especially, subsections 11.3.3, 11.3.4, 11.3.22, and 11.3.27) do not in any way prohibit the sharing of information for purposes of engaging in protected concerted activity.

---

# Employee Agreement

5. Violation of Manager's Standard of Ethics.

6. No call/no show for three consecutive days (job abandonment) or unauthorized absence for three consecutive days.

7. Violation of Costco's Leave of Absence (LOA) policy including, but not limited to:
   a. Unauthorized leave of absence
   b. Failure to return from a leave of absence
   c. Failure to provide required documentation for a leave of absence
   d. Failure to comply with the LOA policy including, but not limited to, providing false or misleading information in connection with a leave of absence

8. Any act that jeopardizes the order of business or safety of the Company, the employee, other employees, customers, suppliers, or Company property including, but not limited to:
   a. Unbecoming conduct or horseplay
   b. Statements made orally or in writing (including over the Internet) that damage the Company or defame any individual [39]
   c. Possession of firearms, weapons, or explosives on Company time or premises [40]

9. Any conflict of interest which includes, but is not limited to:
   a. Creating a business in competition with Costco
   b. Working for another employer in competition with the Company [41]
   c. Performing unauthorized work for a customer as a representative of Costco.

10. Serious misconduct of any kind as defined by the Company.

11. Excessive Policy Violations including, but not limited to:
    a. Three unpaid suspensions in a 12-month period
    b. Third violation of Causes for Disciplinary Action of the same or similar nature within a six-month period*
    c. Your counseling notices within a six-month period, even if unrelated.*
       * Counseling Notices for Excessive Absenteeism cannot be counted.

12. Any conduct or relationship that jeopardizes your ability to perform your job responsibilities safely, competently and/or honestly.

13. Creating or contributing to unsanitary or immoral conditions.

14. Any violation of the Drug and Alcohol-Free Workplace Policy. [42]

[39] Except where otherwise provided by law.
[40] Except where otherwise provided by law.
[41] Except where otherwise provided by law.
[42] Except where otherwise provided by law.



# COSTCO WHOLESALE

## Employee Agreement

15. Proof or confession of dishonesty including, but not limited to:
    a. Grazing[43]
    b. Theft of any kind

16. Borrowing, using, lending, removal of, or giving away Company funds, merchandise, or equipment without written authorization of a Manager including, but not limited to:
    a. Taking non-purchased merchandise beyond the point of sale (registers)
    b. Concealing merchandise in such a manner that it cannot be accessed for purchase

17. Fighting, striking, or attempting to strike another person, or any act of violence or threat of violence occurring on Company premises or on Company time.

18. Willful damage or destruction of Company property, equipment, merchandise, or property of others on Company premises.

19. Insubordinate conduct including, but not limited to:
    a. Refusal to comply with the direct instructions or directions of your Supervisor
    b. Any violation of, or non-compliance with, a Contract for Continued Employment

20. Conviction or record of conviction of a job-related crime including, but not limited to, adjudication or where sentence is imposed.[44]

21. Extending or receiving unauthorized discounts, refunds, or credits including, but not limited to:
    a. Failure to record sales
    b. Ringing up one's own sales or a family member's sales
    c. Misuse of the Executive Membership benefit
    d. Processing one's own Optical order or a family member's Optical order
    e. Working with an open register
    f. Misuse of coupons, cash cards, p-cards or other Company-related funds

22. Unauthorized posting, distribution, removal, or alteration of any material in work areas.

23. Unauthorized entry or exit from Company premises at points other than those designated for employees. Entering restricted areas without authorization.

24. Leaving Company premises during working shift without permission of management.

<hr />

[43] Except where otherwise provided by law.
[44] Grazing includes, but is not limited to, making personal use of shelf stock, RTV merchandise (including merchandise being destroyed for credit), merchandise returned by members, and any packages that either become opened or damaged during the course of business (e.g., blade cut, defective seams, etc.). Also included are Food Court and fresh food products and any ingredients used in their preparation. "If you didn't buy it, don't eat it!"

2010 US Employee Agreement

---

# COSTCO WHOLESALE

## Employee Agreement

25. Exceeding maximum time granted for leaves of absence or exceeding a vacation period.

26. Accepting employment with another employer while on leave of absence.[45]

27. Disobedience of Company rules including, but not limited to:
    a. Electronic Communications and Technology policy
    b. Safety policies and procedures
    c. Fire procedures
    d. Sanitary rules and regulations, SSOP's and food handling regulations

28. Giving or accepting gratuities, gifts, presents, money, or tips from members/customers, or suppliers.

29. Failure to produce or maintain required licenses or proper work authorization, including, but not limited to:
    a. Licensed or certified Pharmacy, Optical, Hearing Aid personnel are required to maintain their own license or certificate as a condition of employment.
    b. Employees working in the tire shop must maintain current driver's license.
    c. Non-citizens must maintain current government-issued work authorizations.

30. Failure to report to your Supervisor/Manager any injury, accident, or damage to Company property.

## 11.4 CAUSES FOR DISCIPLINARY ACTION

1. Excessive absenteeism is defined as exceeding seven instances in any 12-month period, extended by any leave of absence. (Consecutive absences count as one instance.) Unscheduled paid sick/personal days are included for purposes of calculating instances of absence.[46]

   - The eighth and ninth instances in any 12-month period will each result in a documented Employee Counseling Notice.
   - The tenth instance in any 12-month period will result in an unpaid three-day suspension.
   - The eleventh instance in any 12-month period will result in termination of employment.

   **What does not count as an instance of absence.**[47]
   - When you received your Manager's approval by requesting a day off in advance.
   - Absence due to an approved LOA and any other absence protected by applicable law.

<hr />

[45] Except where otherwise provided by law.
[46] Except where otherwise provided by law.
[47] In accordance with applicable law, there may be other instances of absence that do not count as absenteeism.

2010 US Employee Agreement



## Employee Agreement



2. Excessive tardiness – three separate tardies in any 30-day period is considered excessive. Reporting to work four or more minutes but less than 60 minutes late is considered tardy. Tardies can only be counted once.

3. Failure to follow the posted schedule including, but not limited to:
   a. Trading, switching, or not following the posted work schedule without prior approval of management.
   b. Beginning work prior to the start of your shift or leaving before your work shift is completed without the express approval of management to change your schedule. Working "off the clock."
   c. Failure to notify management of your absence at least one hour before the start of your shift unless you are working the first shift of the day, in which case you must notify management at the start of your shift.
   d. No call/no show - If you have not reported to work or called management within 60 minutes of your scheduled start time it will be considered a no call/no show, regardless of whether you report to work later that day.
   e. Working overtime without prior approval from management.

4. Failure to perform work as required. Not meeting Company requirements for quality, accuracy or quantity of work, inefficiency or the inability to perform assigned tasks (job incompetence), violations of cash handling policies (excluding theft of any kind or other acts of dishonesty).

5. Use of rude, derogatory, or obscene language or gestures, not of the nature to constitute a violation of the anti-harassment policy.

6. Discourtesy, insolence, or rudeness to a member or supplier.

7. Improper use of Company property.

8. Unnecessary loitering, wasting of time, engaging in personal conversations, detracting from your work or the work of others, including any behavior or conduct that causes a disruption in the workplace.

9. Use of the following except in emergency situations and then only with express management approval:
   a. Company telephones, fax machines, computers, and property for personal business.
   b. Technological advances continue to enhance our ability to communicate, but we need to be mindful that the new devices can be disruptive and are not appropriate in the workplace. Accordingly, use of the following while working is prohibited: personal cell phones and other electronic devices, such as cameras, pagers, or PDAs.

10. Taking an extended break or meal period. Loafing or other abuse of Company time.

11. Parking cars in areas not assigned as employee parking areas or "on premises" traffic violations.

12. Violations of established policies and procedures including, but not limited to:
    a. Excessive failure to consistently or accurately swipe in or out at beginning and at end of shift, at beginning and at end of meal period, including swiping in early from your meal period. (Three separate failures to swipe consistently or accurately in a 30-day period is considered excessive.)
    b. Excessive failure to begin your meal period (if required) no later than the fifth hour of work (three separate failures in a 30-day period is considered excessive).
    c. Excessive failure to sign and verify the accuracy of your time records (three separate failures to sign in a 90-day period is considered excessive).

13. Chewing gum, chewing tobacco, or smoking, except in designated areas, and never on the sales floor or at the registers.

14. Failure to follow any safety rules or regulations, including, but not limited to, improper lifting or box cutting techniques.

15. Presenting the Company with a personal check for insufficient funds/closed account, and/or defaulting on a Company-sponsored credit card.

16. Soliciting or collecting funds for any purpose during work time without permission of a Supervisor or Manager.

17. Failure to follow rules and regulations from the security department concerning identification/name badges and/or other procedures.

18. Violation of Costco's Personal Appearance policy.

2010 US Employee Agreement

2010 US Employee Agreement